**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RICHARD ROSENAU,** ) | |
|    **on behalf of himself and all others** ) | |
|    **similarly situated,** ) | |
| ) | **CIVIL ACTION** |
|        **Plaintiff,** ) | **NO. 06-cv-1355** |
| ) | |
|    **v.** ) | |
| ) | |
| **UNIFUND CORPORATION a/k/a** ) | |
| **UNIFUND GROUP CORPORATION and** ) | |
| **UNIFUND CCR PARTNERS,** ) | |
| ) | |
|        **Defendants.** ) | |

**MEMORANDUM OPINION AND ORDER**

Rufe, J.                                                                                    August 10, 2009

The parties in this putative class action alleging violations of the Fair Debt Collection Practices Act ("FDCPA")[1] have negotiated a class action settlement ("Settlement") and now seek approval of the same. Plaintiff Richard Rosenau's Motion for final approval of the Settlement, in addition to approval of Class Counsel's fees and costs and of an award to Plaintiff as the Class Representative, is presently before the Court.[2] For the reasons that follow, the Court will approve the Settlement, as well as the fees and costs of Class Counsel and the award to Plaintiff as the Class Representative.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Richard Rosenau filed a class action complaint on March 29, 2006 against

---

[1] 15 U.S.C. 1692, et seq.

[2] Pl.'s Mot. and Br. in Support of Final Approval of Class Settlement, for Approval of Attorney's Fees and Costs and Award to Representative Pl. [Document No. 36] ("Pl.'s Mot.").

Defendants Unifund Corporation (a/k/a Unifund Group) and Unifund CCR Partners under the FDCPA.[3]  Plaintiff alleged that he received a deceptive debt-collection letter from Defendants, purporting to be from the "Legal Department" despite the lack of an attorney involvement.[4]  Defendants answered Plaintiff's Complaint on May 11, 2006.[5]  On October 27, 2006, Plaintiff filed a Motion for class certification,[6] while on the same day, Defendants filed a Motion for judgment on the pleadings or, in the alternative, for summary judgment.[7]  On November 16, 2006, Plaintiff filed its opposition to Defendants' dispositive Motion.[8]  Defendants filed their opposition to Plaintiff's Motion for class certification on November 17, 2006.[9]  Plaintiff filed a reply in further support of his Motion for class certification on November 22, 2006.[10]

In a June 28, 2007 Memorandum Opinion and Order, the Court granted Defendants' Motion for judgment on the pleadings, dismissed Plaintiff's Motion for class certification and dismissed Plaintiff's Complaint with prejudice.[11]  The Court held that the letter of which Plaintiff complained was not false, deceptive or misleading under the FDCPA, as not even the least sophisticated debtor

---

[3] Compl. [Document No. 1].

[4] Compl. ¶¶ 7-11.

[5] Answer [Document No. 7].

[6] Pl.'s Mot. for Class Cert. [Document No. 14].

[7] Defs. Unifund Corp. and Unifund CCR Partners' Mot. for J. on the Pleadings or, in the Alternative, Mot. for Summ. J. [Document No. 15].

[8] Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for J. on the Pleadings or in the Alternative for Summ J. [Document No. 16].

[9] Defs. Unifund Corp. and Unifund CCR Partners' Mem. of Law in Opp'n to Pl.'s Mot. for Class Cert. [Document No. 17].

[10] Pl.'s Reply in Support of Class Cert. {Document No. 18].

[11] Mem. Op. and Order, June 28, 2007 [Document No. 19].

could reasonably interpret the letter as having been written or reviewed by an attorney.[12]  Although

the Court granted Defendants' Motion for judgment on the pleadings and dismissed Plaintiff's

Complaint, the Court also found that the class Plaintiff sought to represent satisfied the requirements

for a Rule 23(b)(3) class action.[13]

On July 3, 2007, Plaintiff appealed the grant of Defendant's Motion for judgment on the

pleadings and the dismissal of his Complaint to the Court of Appeals for the Third Circuit.[14]  In an

August 20, 2008 opinion, the Third Circuit reversed the June 28, 2007 Order of this Court, holding

that "it is possible that a debtor receiving a collection letter from Unifund could reasonably infer that

the Legal Department contains attorneys who played a role in writing or sending the letter."[15]  On

September 17, 2008, the Third Circuit remanded this matter for further proceedings.[16]

On December 15, 2008, the Court held a scheduling conference in this matter,[17] and issued

a scheduling order the next day to govern further proceedings.[18]  Plaintiff renewed his Motion for

---

[12] Id. at 4-7.

[13] Id. at 7-11.

[14] Notice of Appeal [Document No. 20].

[15] Rosenau v. Unifund Corp., 539 F,3d 218, 223 (3d Cir. 2008).  The Third Circuit agreed with the Court's dismissal of Plaintiff's claim under 15 U.S.C. § 1692e(10), which contended that the letter was deceptive because it indicated that it came from the Legal Department even though Defendants did not have such a department.  Id. at 224.  Yet, the Third Circuit noted it was inappropriate to dismiss this claim through a judgment on the pleadings as documents outside of the pleadings were examined.  Id. at 25.  The Third Circuit stated that the Court should re-consider Defendants' motion as one for summary judgment, and determine whether both parties had the opportunity to present all material pertinent to a Rule 56 Motion.  Id.  During a December 9, 2008 conference with counsel for both parties, counsel for Plaintiff conceded that the Third Circuit decision foreclosed relief under Plaintiff 15 U.S.C. 1692e(10) claim.  Thus, only Plaintiff's claim under 15 U.S.C. § 1692e(3) remained to be litigated.

[16] Document No. 23.

[17] Document No. 30.

[18] Sched. Order, December 16, 2008 [Document No. 27].

class certification and in light of the Court's findings in its June 28, 2007 Memorandum Opinion and Order, the Court certified the Class on contest, defining the Class as follows:

> All persons with addresses in the Commonwealth of Pennsylvania to whom collection letters were sent by Defendants Unifund Corporation and Unifund CCR Partners from March 30, 2005 to March 30, 2006 in an attempt to collect a debt incurred primarily for personal, family or household purposes, in which Defendants state that the letter came from or was otherwise authored by the "Legal Department."[19]

In the same December 31, 2008 Order, the Court also appointed Plaintiff Richard Rosenau as Class Representative; Plaintiff's counsel as Class Counsel; and First Class, Inc. of Chicago as Class Action Administrator ("CAA").[20]

In the meantime, the parties had resumed discovery upon remand and motion practice was required for discovery issues that arose. Plaintiff filed his first Motion to Compel on December 9, 2008.[21] The parties were not able to resolve the issues among themselves, and Plaintiff filed yet another Motion to Compel on January 5, 2009.[22] After Defendants failed to respond to either Motion, the Court granted both of Plaintiff's Motions to Compel as unopposed on January 27, 2009.[23] Among the discovery conducted by the parties after remand were interrogatories and requests for documents from Plaintiff that Defendants answered.[24] Plaintiff also took three depositions in a location close to Defendants' Ohio offices concerning liability and other class

---

[19] Order, December 31, 2008 [Document No. 28] ¶ 1.

[20] Id. ¶¶ 2-4. Plaintiff's counsel which was appointed as Class Counsel included Cary L. Flitter, Theodore E. Lorenz and the firm of Lundy, Flitter, Beldecos & Berger, P.C.

[21] Pl.'s Mot. to Compel Discovery Resps. [Document No. 25].

[22] Pl.'s Mot. to Compel Resps. to Pl's Second Req. for Docs. [Document No. 29].

[23] Order, January 27, 2009 [Document No. 31] .

[24] Pl.'s Mot. at 9.

issues.[25]  Finally,  Plaintiff subpoenaed and deposed Defendant's certified public accountant ("CPA") on January 13, 2009 in New York City to probe Defendants' net worth.[26]

## II.    SETTLEMENT, PRELIMINARY APPROVAL AND CLASS NOTICE

On March 5, 2009, after counsel advised the Court that they had reached a settlement in principle, the Court issued an amended Scheduling Order.[27]  By March 18, 2009, all parties had signed the Class Action Settlement Agreement and Release ("Settlement Agreement").[28]  Under the terms of the Settlement Agreement, in exchange for a release of the Class claims, Defendants agreed to make a class-wide settlement payment of $100,000 into a settlement fund to be divided equally among the class members on a claims-made basis.[29]  A *cy pres* donation of any unclaimed, undistributed or undistributable monies in the settlement fund would be made in equal parts to the Senior Law Center and to Legal Aid of Southeastern Pennsylvania.[30]  Separate from the settlement fund, Defendants also agreed to pay Class Counsel's fees and costs,[31] an award of $4,000 to Plaintiff as the Class Representative, including a $1,000 individual award and a $3,000 incentive award,[32] as well as the costs of the CAA.[33]  At the time of the Settlement Agreement, the parties had not yet

---

[25] Id.

[26] Id.

[27] Sched. Order, March 5, 2009 [Document No. 32].

[28] Pl.'s Mot. Ex. A (Class Action Settlement Agreement & Release ("Settlement Agmt")).

[29] Id. ¶¶ 9-11, 15(c).

[30] Id. ¶ 15.

[31] Id. ¶ 15(b).

[32] Id. ¶ 15(a).

[33] Id. ¶ 14.

agreed on the amount of Class Counsel's fees and costs.

Per the amended Scheduling Order, Plaintiff filed his uncontested Motion for preliminary approval of the class settlement and notice to the class on March 30, 2009.[34]  The Court granted that Motion for preliminary approval soon thereafter, setting a final settlement hearing date for August 3, 2009 at 10:00 a.m.[35]  The Court also approved the sample Class Notice and Claim Form.[36]  Among other things, the Class Notice included information on the proposed class settlement;[37] instructions class members could follow in order to make a claim to, object to or opt out of the proposed settlement;[38] and information regarding the fairness hearing set for August 3, 2009.[39]  As the fees and costs of Class Counsel had yet to be determined, the Class Notice stated that "Class Counsel will ask the court to award fees and expenses not to exceed $205,000."[40]  The Class Notice also included a toll-free telephone number that class members could contact for more information.[41]  This toll-free number was established and maintained by Class Counsel, and many class members did contact it for further information.[42]

---

[34] Pl.'s Mot. for Prelim. Approval of Class Settlement and Notice to the Class (Uncontested) [Document No. 33].

[35] Order, March 31, 2009 [Document No. 35].

[36] Pl.'s Mot. for Prelim. Approval of Class Settlement and Notice to the Class (Uncontested) Ex. D (Notice of Proposed Class Action Lawsuit Settlement ("Class Notice"); Order, March 31, 2009 ¶¶3(c), (d).

[37] Class Notice at *1, *3-*4.

[38] Id. at *2, *5-*6.

[39] Id. at *7.

[40] Id.

[41] Id. at *8..

[42] Pl.'s Mot. Ex. E at 27-29.

Class Counsel provided the class list to the CAA.[43]  The CAA processed the class list through the Coding Accuracy Support System ("CASS") which corrects zip codes and verifies that the address is correctly formatted.[44]  The CAA also processed the list though the National Change of Address ("NCOA") update process certified by the United States Postal Service which provides current address information, if available, as well as information regarding deliverability.[45]  Finally, the CAA checked for duplicate records, removing the three that were found.[46]  On April 14, 2009, the CAA mailed the Class Notice packets including the Claim Form to 6,028 class members via First Class mail with postage prepaid and forwarding service requested.[47]  Any Class Notice packets that were returned with a forwarding address were sent out again.  525 packets were returned to the CAA as undeliverable with no forwarding address and no further information provided by the United States Postal Service.[48]

The Class Notice notified class members that they had until June 19, 2009 to file a timely Claim Form.[49]  The Class Notice also gave a deadline of May 19, 2009 for class members to either object to the Settlement, and to exclude themselves from it.[50]  Hence, according to the terms of the Class Notice, class members had over a month from the time the Class Notice packets were mailed

---

[43] Pl.'s Mot. Ex. B (Aff. of Michael Caines ("Caines Aff.") ¶ 3.

[44] Id. ¶ 4.

[45] Id.

[46] Id. ¶ 5.

[47] Id. ¶¶ 6-7.

[48] Id. ¶ 10.

[49] Notice of Proposed Class Action Lawsuit Settlement [Document No. 38] ("Actual Class Notice") at *1.

[50] Id. at *2.

to either object to the Settlement or to opt out of it.  They had over two months to file a claim.

## III.   NEGOTIATION OF CLASS COUNSEL'S FEES AND COSTS

As of July 8, 2009, Class Counsel, using the lodestar method, calculated that they had accrued $194,287.56 in fees and costs that they were owed.[51]  Class Counsel calculated their lodestar as $184,222 in fees, which included 172.30 hours billed by Senior Partner Cary Flitter at a rate of $515 per hour for a total of $88,734.50; 191.10 hours billed by Junior Partner Theodore E. Lorenz at a rate of $370 per hour for a total of $70,707; 27.20 hours billed by Associate Andrew M. Milz at a rate of $210 per hour for a total of $5,712; 74.30 hours billed by Associate K. Timily Frazier at a rate of $210 per hour for a total of $15,603; 12.60 hours billed by Paralegal Joan M. Raughley at a rate of $145 per hour for a total of $1,827; and 11.30 hours billed by law clerks at a rate of $145 per hour for a total of $1,638.50.[52]  Class Counsel also incurred $10,065.56 in costs.[53]  Nevertheless, in negotiations following the Settlement Agreement, the parties agreed in June of 2009 that Class Counsel would cap their fees and costs at $165,000.[54]

## IV.   RESPONSE TO THE CLASS NOTICE AND FAIRNESS HEARING

In response to the mailed Class Notice packets, and pursuant to instructions provided therein, the CAA received from class members 947 timely claims for payment, 16 late claims and 3 requests for exclusion.[55]  The CAA did not receive any objection to the Settlement, either in the

---

[51] Pl.'s Mot. Ex. E at 33.

[52] Pl.'s Mot. Ex. E at 31.

[53] Id. at 31-33.

[54] Pl.'s Mot. Ex. C.

[55] Caines Aff. ¶¶ 8-9, 12.

form specified in the Class Notice, or otherwise.[56]  Nor did the CAA receive any objection to the proposed amount of Class Counsel's fees and costs, or to the award to Plaintiff as the Class Representative.[57]  No class member submitted a notice of intention to appear at the August 3, 2009 Fairness Hearing.  In sum, no objection, to any aspect of the Settlement, has been registered by a class member.

On July 15, 2009, Plaintiff filed a timely Motion for final approval of the Settlement, as well as for approval of attorneys' fees and costs and the award to Plaintiff.[58]  The Court held a Fairness Hearing on August 3, 2009, at which counsel provided information on the record.  One member of the Class, Ms. Maribel Cancel, did personally appear at the Fairness Hearing, but did not make a statement nor raise any other issue during the hearing.[59]  As Class Counsel later determined that Ms. Cancel had already filed a timely claim for payment, her appearance at the hearing has no effect on the instant Motion.  Also at the hearing, Class Counsel requested without opposition from Defendants that the Court approve treating the 16 late claims as timely.  Counsel for Defendants joined in the instant Motion, noting that both liability and damages were heavily contested in this matter.  Moreover, counsel for Defendants stated that he believed the proposed fees and costs of Class Counsel were both fair and reasonable.

## V.   EVALUATION OF THE SETTLEMENT

---

[56] Id. ¶ 11.

[57] Id.

[58] Pl.'s Mot.

[59] The Court notes that Ms. Cancel's limited English made communication difficult, but Class Counsel was able to determine that she had appeared in response to the Class Notice and was seeking to make a claim.  Class Counsel requested that the Court approve treating her claim as timely.  However, as Class Counsel later determined that she had already filed a timely claim for payment, this request is moot.

In order to approve the Settlement, the Court must first determine that the Class Notice provided to class members satisfied the Due Process Clause of the Fifth Amendment and the requirements of Federal Rule of Civil Procedure 23. Then, the Court will determine if the settlement is fair, reasonable and adequate.

### A.    Class Notice Satisfies the Due Process Clause and Rule 23

"In the class action context, the district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class."[60]  Due process thus requires "reasonable notice, the opportunity to be heard and the opportunity to withdraw from the class."[61]  In addition, notice of a Rule 23(b)(3) class action, such as that presented here, must meet the requirements of Federal Rules of Civil Procedure 23(c)(2)(B)[62] and 23(e).  Rule 23(c)(2)(B) directs that the notice must explain the legally binding effect of the class action on class

---

[60] In re Prudential, 148 F.3d 283, 306 (3d Cir. 1998).

[61] Id.  Courts in this Circuit have stated that "[t]he notice must be reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Nichols v. SmithKline Beecham Corp., No. 00-6222, 2005 WL 950616, at *9 (E.D. Pa. April 22, 2005) (quoting Lachance v. Harrington, 965 F. Supp. 630, 636 (E.D. Pa. 1997)).

[62] Rule 23(c)(2)(B) provides:

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:

(i)    the nature of the action;
(ii)   the definition of the class certified;
(iii)  the class claims, issues, or defenses;
(iv)  that a class member may enter an appearance through an attorney if the member so desires;
(v)   that the court will exclude from the class any member who requests exclusion;
(vi)  the time and manner for requesting exclusion;
(vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

FED. R. CIV. P. 23(c)(2)(B) (2007).

10

members, the opportunity to opt out of the class, and the opportunity to appear through counsel.   It also provides that individual notice should be sent to members whenever reasonably possible.   Rule 23(e) "requires that notice of a proposed settlement must inform class members: (1) of the nature of the pending litigation; (2) of the settlement's general terms; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the Fairness Hearing."[63]

As with the proposed Settlement, there has been no objection to the notice herein.  The Class Notice plainly reported the claims at issue, defined the Class, described the details of the proposed Settlement, explained that complete information was available through the Court, and notified individuals of their entitlement to appear through an attorney and of the steps necessary to opt out of the class.  The Class Notice was mailed directly to class members by the CAA.  Reasonable efforts were made through CASS and NCOA to determine the most recent address for class members.  Any Class Notice packets returned with forwarding information were mailed again.  In these ways, the notice process comported with the requirements of Due Process and Rule 23.

### B.        The Settlement is Fair, Reasonable and Adequate

Under Federal Rule of Civil procedure 23(e), "[t]he claims . . . of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."[64]   Generally, settlements are favored in the class action context.[65]   Yet the district court functions "as a fiduciary who must serve as a guardian of the rights of absent class members" when evaluating a proposed

---

[63] In re Diet Drugs (Phentermine, Fenluramine, Dexfenfluramine) Prod. Liab. Litig., MDL No. 1203, 2005 WL 636788, at *18 (E.D. Pa. Mar. 15, 2005).

[64] FED. R. CIV. P. 23(e) (2007).

[65] In re General Motors, 55 F.3d 768, 785 (3d Cir. 1995).

settlement.[66]  In its discretion,[67] the Court may accept the proposed agreement only if the parties have

shown it to be fair, reasonable, and adequate.[68]

In Girsh v. Jepson, the Third Circuit Court of Appeals promulgated a nine-factor test courts

should use in analyzing the quality of a class action settlement.[69]  The nine factors are:

> (1) The complexity, expense and likely duration of the litigation; (2) the
> reaction of the class to the settlement; (3) the stage of the proceedings and the
> amount of discovery completed; (4) the risks of establishing liability; (5) the
> risks of establishing damages; (6) the risks of maintaining the class action
> through trial; (7) the ability of the defendants to withstand a greater
> judgment; (8) the range of reasonableness of the settlement fund in light of
> the best possible recovery; and (9) the range of reasonableness of the
> settlement fund to a possible recovery in light of all the attendant risks of
> litigation.[70]

In addition, Plaintiff seeks that we also consider three additional factors, including (1) whether class

members have had a sufficient opportunity to opt out of the settlement; (2) whether the award to the

Plaintiff as the Class Representative is fair, adequate and reasonable; and (3) whether the procedures

for processing the individual claims under the settlement are fair and reasonable.[71]  The Court

reviews the Settlement in light of these factors, in turn, below.

### 1.    Complexity, expense and likely duration of the litigation

---

[66] Id.

[67] Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir. 1975).

[68] FED. R. CIV. P. 23(e)(2); In re General Motors, 55 F.3d at 785.

[69] 521 F.2d at 156-57.

[70] In re Cendant, 264 F.3d 201,  232 (3d Cir. 2001) (quoting Girsh, 521 F.2d at 156-57).

[71] Pl.'s Mot. at 7 (citing In re Prudential, 148 F.3d at 323).  Plaintiff also asked that the Court consider
whether the pleadings, settlement negotiations, and the class certification motion have developed the underlying
substantive issues such that all parties may assess the merits of the claims and defenses.  The Court, however, finds
this duplicative of the third Girsh factor, and therefore will not address it separately.

This factor seeks to "capture[] the probable costs, in both time and money, of continued litigation."[72]  This matter has been litigated for three and a half years.  If it were to proceed, further merits discovery would be warranted.  Case dispositive motions would be prepared and opposed.  It seems likely that trial preparation would be necessary on both sides, as the parties agree that both liability and damages are likely to be questions for the jury.  Moreover, post-judgment motions and appeals "would further prolong the litigation and would significantly reduce the value of any monetary recovery" by class members.[73]  It is noteworthy that this matter has been once appealed to the Third Circuit.  As the complexity, expense and likely duration of this litigation would be great, the first Girsh factor weighs in favor of the Settlement.

2.      Reaction of the class

This factor seeks to gauge class member support for the proposed settlement.[74]  As noted, 6,028 Class Notices packets were mailed to class members, and 525 of the packets were returned as undeliverable.  Thus, 5,503 packets were mailed to class members at apparently serviceable addresses.  No class members objected in any fashion to the proposed settlement, while only 3 individuals opted out of the class, representing less than .05% of the class.  It is therefore fair to infer that a vast majority of the class supports the Settlement.  The Court finds that the second Girsh factor supports approval of the Settlement.

3.      Stage of Proceedings and Discovery

This factor "captures the degree of case development that class counsel has accomplished

---

[72] In re Warfarin, 391 F.3d 516, 535-36 (3d Cir. 2004) (quoting In re Cendant, 264 F.3d at 233).

[73] First State Orthopaedics v. Concentra, Inc., 534 F. Supp. 2d 500, 517 (E.D. Pa. 2007) (citing In re Warfarin, 391 F.3d at 536).

[74] In re Prudential, 148 F.3d at 318.

prior to settlement," permitting a court to "determine whether counsel had an adequate appreciation of the merits of the case before negotiating."[75]  As aforementioned, this matter has seen prolonged litigation of class certification in the District and appeals courts.  Moreover, after the Third Circuit remanded this matter, the parties conducted discovery which included interrogatories, document productions, and depositions regarding liability and damages.  Hence, this <u>Girsh</u> factor also favors the Settlement.

        4.      Risks of establishing liability

For this factor, the Court assesses "what the potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them."[76]  Plaintiff believes that he can establish liability in this case.  Defendants, however, vigorously contest that their letter is false, deceptive or misleading in violation of 15 U.S.C. § 1692e(3).  Defendants also plan to assert a "bona fide error" defense.  Under this defense, a debt collector will not be liable if it is shown "by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."[77]  Thus, liability may be a jury question and therefore, this <u>Girsh</u> factor supports approval of the Settlement.

        5.      Risks of establishing damages

"This inquiry attempts to measure the expected value of litigating the action rather than

---

[75] <u>In re Warfarin</u>, 391 F.3d at 537 (quotation and citation omitted).

[76] <u>In re Cendant</u>, 264 F.3d at 237.

[77] 15 U.S.C. § 1692k(c).

settling it at the current time."[78]   In this matter, the damages that the Class may recover are limited to the lesser of $500,000 or 1% of the net worth of Defendants.[79]   Here, the net worth of Defendants is heavily contested.   Defendants claim they have zero net worth and Plaintiff believes it to be between $10 and $23 million.   Establishing net worth at trial would most likely be a "battle of the experts," and ultimately a jury question.   The Settlement represents a recovery equal to 1% of $10 million.   Thus, as there is a risk that the Class will not be able to establish Defendants' net worth at an amount great enough to allow damages equal to the Settlement, the Court finds that this <u>Girsh</u> factor weighs in favor of the Settlement.

6.   <u>Risks of maintaining the class action through trial</u>

In light of the certification analysis undertaken above, in which the Court concludes that the instant settlement class readily meets the requirements for certification under Rule 23, the Court discerns no reason to find that the class would be vulnerable to decertification or modification in the litigation and trial context.[80]   Plaintiff's theory of liability is straightforward and predicated on a legal issue which affects all class members in the same way.   This total identity of cause of action asserted by class members, and the fact that it derives exclusively from a narrow issue within the FDCPA, reduces the likelihood of divisive issues emerging around the Rule 23 certification factors. Moreover, the Class is composed of Pennsylvania residents only and therefore, is not subject to the laws of multiple jurisdictions.   As a result, this <u>Girsh</u> factor does not support the proposed Settlement.

---

[78] <u>In re General Motors</u>, 55 F.3d at 816.

[79] 15 U.S.C. § 1692k(a)(1)(B).

[80] <u>See</u> <u>In re Cendant</u>, 264 F.3d at 239 (citing Fed. R. Civ. P. 23(a)).

15

7.     Defendants' ability to withstand greater judgment

Plaintiff admits that Defendants could withstand a greater judgment.  Yet, given the

FDCPA's statutory limit on the damages as explained *supra*, this does not mean that the Class could

actually recover a larger judgment from Defendants.  Hence, the Court finds that this factor weighs

neither for nor against the Settlement.

8. and 9.     Range of reasonableness of settlement in light of the best possible
recovery and all the attendant risks of litigation

These final <u>Girsh</u> factors "ask whether the settlement is reasonable in light of the best

possible recovery and the risks the parties would face if the case went to trial."[81]  To assess the

reasonableness of a settlement involving monetary relief, "'the present value of the damages

plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing,

should be compared with the amount of the proposed settlement.'"[82]  These factors capture "whether

the settlement represents a good value for a weak case or a poor value for a strong case."[83]

According to Plaintiff, the maximum recovery available to the Class is $230,000.  Such a

recovery requires that the jury not only find for Plaintiff and the Class on the question of liability and

against Defendants on their "bona fide error" defense, but also the jury must determine that

Defendants' net worth is $23 million.  Yet, the question of net worth would require expert testimony,

the fees for which would be deducted from the Class's recovery and reduce the amount distributable.

The Plaintiff also correctly points out that dispositive motions, trial preparations, trial and a second

possible appeal would consume considerable time and resources.  The Settlement allows the Class

---

[81] <u>In re Prudential</u>, 148 F.3d at 322.

[82] <u>Id.</u> (quoting <u>In re General Motors</u>, 55 F.3d at 806).

[83] <u>First State</u>, 534 F. Supp. 2d at 520 (citing <u>In re Warfarin</u>, 391 F.3d at 538).

to collect a recovery equal to the maximum damages it would have been rewarded had the Plaintiff and the Class proved liability and a net worth of $10 million, without the risks attendant on doing so.   Hence, the Court finds that this Settlement is reasonable both in light of the best possible recovery and in light of all the attendant risks of litigating this matter further.   Thus, these final factors also favor the Settlement.

### 10.     Opportunity of class members to opt out of the settlement

The CAA mailed Class Notice packets on April 14, 2009.   The Class Notice informed class members that they had the right to exclude themselves from the Settlement and could do so by mailing a letter to the CAA by May 19, 2009.   The Class Notice was printed in a large, easy to read font and explained the Settlement and the procedure for opting out in simple, easily understood language.   Given the simplicity and clarity of the Class Notice, that class members had 35 days to opt out of the settlement from the date the Class Notice packets were mailed, and the ease with which they could do so, the Court finds that this additional factors favors the Settlement.

### 11.     Fairness, adequacy and reasonableness of the award to Plaintiff as the Class Representative

Plaintiff argues that his award as the Class Representative is fair, adequate and reasonable and thus weighs in favor of the Settlement.   Plaintiff also seeks the Court's approval of this award, separate from the Settlement.   The Settlement provides that Defendants will pay Plaintiff, separate from the settlement fund, a total of $4,000, including $1,000 in individual statutory damages under the FDCPA,[84] as well as a $3,000 incentive award in recognition of his time and efforts, and the benefit conferred upon the Class.   As the Class Representative, Plaintiff obtained counsel to file this

---

[84] See 15 U.S.C. § 1692k(a)(2)(A).

17

case as a class action.  He also fully participated with Class Counsel throughout this litigation, meeting with Class Counsel and reviewing many pleadings and correspondence.  Plaintiff also attended the August 3, 2009 Fairness Hearing.  Defendants do not oppose this award, and there was no objection by other class members to the same.

"Judges of this district have not hesitated to assure that those undertaking class litigation are not penalized for placing a class's interest above their own."[85]  And it is surely proper to provide reasonable incentives to individual plaintiffs whose willingness to participate as lead plaintiffs allows class actions to proceed and so confer benefits to broader classes of plaintiffs.  The award to Plaintiff as the Class Representative is fair, reasonable and adequate.  As a result, not only does another factor favor approval of the Settlement, but the Court will also approve the $4,000 award to Plaintiff as the Class Representative.

> 12.   Fairness and reasonableness of the procedures for processing the claims of individual class members

In the instant matter, if class members made a timely claim, they are entitled to an equal share of the settlement fund.  947 timely claims were made. The Court notes that class members had until June 19, 2009 to make a timely claim, approximately 66 days from the date the Class Notice packets were mailed.  Moreover, Class Counsel requested, and Defendants did not oppose, that the additional 16 late claims also be treated as timely.  The Court approves this requests and therefore, 963 class members are considered to have made timely claims for payment and are entitled to an equal share of the settlement fund, or $103.84.  This method of processing the claims of individual class members, especially the treatment of the late claims, weighs in favor of the Settlement.

---

[85] Cullen v. Whitman Medical Corp., 197 F.R.D. 136, 145 (E.D. Pa. 2000).

18

In sum, a preponderance of the <u>Girsh</u> factors, as well as the additional factors outlined in <u>In re Prudential</u>, weigh in favor of the approval of the Settlement.  The Court thus finds that the proposed Settlement is fair, reasonable and adequate.

### C.  *CY PRES* DONATION

The final aspect of the Settlement is the *cy pres* donation, providing that any unclaimed, undistributed or undistributable monies in the settlement fund would be split equally among the Senior Law Center and Legal Aid of Southeastern Pennsylvania.[86]  Although "'the use of a *cy pres* distribution remains controversial and unsettled in an adjudicated class action context, courts are not in disagreement that *cy pres* distributions are proper in connection with a class settlement, subject to court approval of the particular application of the funds.'"[87]  The Court approves this *cy pres* donation to these particular organizations for the benefit of the Class.  Thus, the Court will grant Plaintiff's Motion for final approval of the Settlement.

### V.  THE FEES AND COSTS OF CLASS COUNSEL ARE FAIR AND REASONABLE

Under the Federal Rules of Civil Procedure, "[i]n an action certified as a class action, the court may award reasonable attorney fees and nontaxable costs authorized by law or by agreement of the parties . . . ."[88]  The FDCPA contains a fee shifting provision allowing a successful plaintiff to collect from the defendant debt collector "the costs of the action, together with a reasonable attorney's fee as determined by the Court."[89]  Here, it is undisputed that Class Counsel are entitled

---

[86] <u>Id.</u> ¶ 15.

[87] <u>Perry v. FleetBoston Financial Corp.</u>, 229 F.R.D. 105, 117 (E.D. Pa. 2005) (quoting 4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.20 (4th ed. 2002).

[88] FED. R. CIV. P. 23(h).

[89] 15 U.S.C. § 1692k(a)(3); <u>see also</u> <u>Graziano v. Harrison</u>, 950 F.2d 107, 113-14 (3d Cir. 1991).

to attorneys' fees and costs.

The lodestar method determines counsel fees by multiplying the number of hours reasonably spent litigating the matter by a reasonable hourly rate.[90]  This method is typically applied in statutory fee shifting cases,[91] and yields a presumptively reasonable fee.[92]  To determine a reasonable hourly rate, a court should assess "the experience and skill of the prevailing party's attorneys and by looking at the market rates in the relevant community for lawyers of reasonably comparable skill, experience and reputation."[93]  A court will use the "current market rate . . . at the time of the fee petition," and not the rate at the time the service were performed.[94]  "The party requesting fees must demonstrate the reasonableness of its request, and therefore must submit evidence that supports its request."[95]  These requests must be thoroughly reviewed by the Court.[96]

Class Counsel submits its fees under the lodestar analysis, yet they have capped their request at $165,000 as part of the settlement process.  Class Counsel has produced time sheets that were kept on a daily, contemporaneous basis to demonstrate the amount of time expended on this matter.  Moreover, Mr. Flitter has submitted a certification that the amount time spent litigating this case was

---

[90] Perry, 229 F.R.D. at 118-19.

[91] Id. at 118.

[92] Washington v. Philadelphia Court of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996).

[93] Perry, 229 F.R.D. at 119 (citing Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001)).

[94] Lanni v. New Jersey, 259 F.3d 146, 149-50 (3d Cir. 2001).

[95] Perry v. FleetBoston Financial Corp., 229 F.R.D. 105, 118 (E.D. Pa. 2005) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).

[96] In re General Motors, 55 F.3d at 819.

reasonable.[97]   After a review of the time sheets, and given the length of this litigation and Class Counsel's successful appeal of the initial dismissal of Plaintiff's Complaint, the Court finds that Class Counsel spent a reasonable number of hours litigating this matter.

As to the hourly rate charged, Class Counsel has submitted certifications from Mr. Flitter, Mr. Lorenz and Mr. Milz attesting to their qualifications.[98] Also submitted was a certification from Mark A. Kearney, Esq. attesting to the reasonableness of the hourly rates charged for Mr. Flitter, Mr. Lorenz, Mr. Milz and Ms. Franzier,[99] as well as a supplemental certification from Mr. Kearney asserting the reasonableness of the hourly rates charged for Ms. Raughley and the law clerks.[100] Given the qualifications of Class Counsel, the prevailing market rates, and the third party certification adduced by Class Counsel, the Court finds that the hourly rates charged by Class Counsel are reasonable.  Thus, the Court finds that under the lodestar method, Class Counsel has accrued $184,222 in fees through the course of this litigation.

Class Counsel also seeks $10,065.56 in costs, and has provided the Court with a detailed list of disbursements made by Class Counsel.[101]   The Court notes that many of these costs were expended in conducting depositions regarding liability and other class issues in Ohio, as well as a deposition of Defendants' CPA in New York.[102]  Thus, the Court approves this $10,065.56 in costs.

---

[97] Pl.'s Mot. Ex. F ¶¶ 15-26.

[98] Pl.'s Mot. Exs. F, H, and I.

[99] Pl.'s Mot. Ex. G.  Class Counsel also attached to Plaintiff's Motion a nationwide sampling of law firm billing rates.  The Court reviewed this material, but it was of limited utility given the broadness of the information provided. (See Pl.'s Mot. Ex. J.)

[100] Supplemental Certification of Mark A. Kearney [Document No. 37].

[101] Pl.'s Mot. Ex. E at 31-32.

[102] Id.

Hence, Class Counsel has shown that they could be entitled to $194,287.56 in attorneys' fees and costs under the lodestar method, even though they have agreed to cap their request at $165,000.

Class Counsel has litigated this matter on a contingency basis with no payment rendered for their services to date. Moreover, although the parties discussed fees, no agreement was reached until after the initial Settlement Agreement was signed.[103] Neither Defendants nor any member of the Class objects to these fees.[104] In fact, during the Fairness Hearing, counsel for Defendants opined that the attorneys' fees and costs requested by Class Counsel were both fair and reasonable. Hence, the Court finds an award of $165,000 to Class Counsel as attorneys' fees and costs is fair and reasonable, and commensurate with the benefit conferred upon the Class. Thus, the Court will approve this award.

## VI.  CONCLUSION

For the reasons set forth above, the Court makes the following rulings. The proposed Settlement satisfies all applicable legal requirements. In particular, it is fair, reasonable, and adequate. Accordingly, it is approved. As the requests for attorneys' fees and costs and for an award to Plaintiff as the Class Representative are both reasonable and appropriate, they are approved as well.

An appropriate order follows.

---

[103] See Settlement Agmt ¶ 15; Pl.'s Mot. Ex. C.

[104] The Court notes that the Class Notice advised the Class that Class Counsel would seek an award of up to $205,000 for its service, and no class member objected to an amount $40,000 greater than the award currently sought.